No. 14,909.

## CUMMINGS ET AL. *v.* MARTIN.

MARRIED WOMAN.—*Loan to.*—*Suretyship.*—Where a married woman personally applies for a loan, and the loan is made in good faith under the belief that the money is for her own use, and she executes a mortgage upon her separate property as security, her husband joining, such married woman is liable as principal, and the fact that there is a secret understanding between the husband and the wife that the money is being borrowed for the husband's use, and is handed to him by the wife as soon as received, is immaterial.

From the Hamilton Circuit Court.

*T. J. Kane* and *T. P. Davis,* for appellants.
*W. Neal* and *R. P. Neal,* for appellee.

McBRIDE, J.—This was a suit by the appellee to foreclose a mortgage given by appellants, Louisa Cummings and Hugh A. Cummings, her husband, to the appellee. The defence was, that the debt which the mortgage was given to secure was the debt of the husband; that the mortgaged property was the separate property of the wife, and that she executed the mortgage as his surety only.

Appellants assign as error the overruling of a demurrer to the complaint. In their brief they content themselves with merely calling attention to the error thus assigned, but do not point out, or attempt to point out, any defect in the complaint. The only other error assigned is in overruling appellants' motion for a new trial. This calls in question the sufficiency of the evidence to sustain the finding of the court.

There is some conflict in the evidence. It is clear, however, that the money was borrowed by the wife. The evidence also shows that, as between the husband and wife, it was understood the money was being borrowed by her for him, and because he had been unable to borrow it. He had applied to several to loan him the money, without success; but he had not applied to the appellee.

There is evidence tending to show that the appellee had no knowledge of the understanding between the husband and wife. The appellant testified that, as soon as the money was handed to her, she handed it to her husband. In this she was corroborated by the husband and their son. Appellee testified that she had no knowledge of this, or that the money was borrowed for the husband.

The officer who took the acknowledgment of the mortgage testified that he saw the money paid by the appellee to the appellant, but did not see her hand it to the husband.

He also testified that the appellant said to him that she was borrowing the money, but expected to let her husband have a part of it, and consulted him about taking a chattel mortgage on the husband's furniture to secure her in doing so. Of this fact the appellee seems to have had no knowledge.

In this State the only restrictions upon the power of a married woman to contract are, that she can not make a valid executory contract to sell or mortgage her real estate, or convey or mortgage the same, except by deed or mortgage in which the husband joins, and she can not enter into any con-

tracts of suretyship; otherwise she can contract as freely as if she were unmarried, and her contracts are as binding upon her. It can not be doubted that one of the principal reasons for the enactment of the statute forbidding married women to enter into any contracts of suretyship, and making such contracts void as to them, was to prevent them from squandering or encumbering their property as sureties for improvident husbands. The courts have rightfully shown a disposition to scan closely contracts where there was reason to suspect that the transaction, while in form a contract, with the wife as principal, was, in fact, an attempted evasion of the statute, the consideration moving solely to the husband. Where this has been found to be true, it has uniformly been held that the contract is within the inhibition of the statute, and is void as to the wife. *Dodge* v. *Kinzy*, 101 Ind. 102; *Vogel* v. *Leichner*, 102 Ind. 55; *Cupp* v. *Campbell*, 103 Ind. 213; *Brown* v. *Will*, 103 Ind. 71; *Allen* v. *Davis*, 99 Ind. 216; *Allen* v. *Davis*, 101 Ind. 187; *Orr* v. *White*, 106 Ind. 341; *Ward* v. *Berkshire Life Ins. Co.*, 108 Ind. 301; *Rogers* v. *Union Cent. Life Ins. Co.*, 111 Ind. 343; *Long* v. *Crosson*, 119 Ind. 3; *Security Co.* v. *Arbuckle*, 119 Ind. 69; *Nixon* v. *Whitely, etc., Co.*, 120 Ind. 360; *Stewart* v. *Babbs*, 120 Ind. 568; *Engler* v. *Acker*, 106 Ind. 223; *Crooks* v. *Kennett*, 111 Ind. 347; *Miller* v. *Shields*, 124 Ind. 166; *Warey* v. *Forst*, 102 Ind. 205.

While this is true, it is, however, not enough that, as between the husband and wife, it was understood that she was only *pro forma* the borrower, and that the husband was to receive the money. It would open the door to the perpetration of great frauds if mortgages were to be declared void simply because, as between the husband and wife, it was understood that the money was being borrowed for the husband's use, and was, in fact, at once handed to and used by him for his sole benefit. *Rogers* v. *Union Cent. Life Ins. Co., supra; Bouvey* v. *McNeal*, 126 Ind. 541; *Ward* v.

*Berkshire Life Ins. Co.,* 108 Ind. 301. In the latter case it is said :

" It is not material that there was a secret agreement between the husband and wife, for the appellee could not be prejudiced by an agreement of which it had no notice. The question is, not what facts were known to the mortgagors, but what facts did the appellee have knowledge of, or ought under the circumstances to be charged with having knowledge of? It is true that the appellee, having notice of Mrs. Ward's coverture, was bound to inquire whether she had capacity to make the contract ; but when reasonable care and diligence are exercised, the party contracting with a married woman may rely upon her representations."

The inquiry above referred to is whether she is contracting, or proposing to contract, as principal or as surety.

It is only where the lender is a party to, or is chargeable with knowledge of, the attempted evasion of the statute that the contract is invalidated. If he in good faith loans the money to the wife, he can not be affected by any secret understanding between her and her husband. The circumstances may be such that, as between husband and wife, he is the principal debtor, and she only his surety ; but if she has personally applied for the loan, and represented to the lender that it was for herself, and he, relying upon such representation has, in good faith, made the loan, she is, as to such lender, not a surety, but the principal debtor.

Language used in *Vogel* v. *Leichner, supra,* and some other cases following it, may seem to assert the proposition that in all cases where one has loaned money to a married woman, the burden of proof is on the lender to show that she received, or was to receive, the benefit of the loan ; or that in the transaction she was not surety. A comparison of these cases with the later cases will show that this is the rule only where there is something about the transaction to indicate that the debt is apparently, or may be, the debt of another, and not her debt. This is not the rule where the transaction shows upon

its face that it is her separate contract. See, especially, *Miller* v. *Shields, supra;* also, *Long* v. *Crosson, supra; Security Co.* v. *Arbuckle, supra.*

In such a case, if she attempts to escape liability on the ground that she is only surety, she must plead and prove such fact, and the burden is upon her to do so. Nor will it be enough for her to show that, as between her and her husband, she is only surety; but she must show that the creditor either contracted with her as surety, or that the circumstances were such as to charge him with knowledge of such fact. Unless there is something to put the lender upon inquiry, or suggest to him that the husband is the real borrower, he may as safely lend money to a married woman as to her husband. The same statute, by one section of which her contracts of suretyship are declared void, by another section provides that " she shall be bound by an estoppel *in pais*, like any other person." See the last clause of section 5117, R. S. 1881. Having by her representations secured the loan, she will be estopped to say that the representations were untrue, and that she was, after all, only surety.

The fact that the appellant, as soon as she received the money, handed it to her husband, can not affect the question. The witnesses all agree that after the note and mortgage were executed the appellee handed the money to the wife. The transaction was then complete, and when the money reached the hands of the borrower she had the right to do with it as she wished. Appellee had then neither the power nor the right to interfere in any manner. She could not compel her to hand back the money, nor could she dictate how it should be disposed of. The same statute which limits the power of a married woman to convey or mortgage her real estate gives her unrestricted power over her personal estate. Section 5117, *supra.*

Having borrowed money, she may give it to her husband, or to any other person. Her dominion over her personal

estate is as absolute as is the dominion of the husband over his.

We find no error in the record, and the judgment is affirmed.

